IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER CARSTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAVE SACKS, MARE MARKIEWICZ, )<br>ERIC VALKCO, KROHN, DALEEP RATHORE, )<br>STANLEY FALOR, MORRIS HARPER, )<br>BRIAN HYDE, SUSAN CROFTCHECK, )<br>PAUL STOWIZKY, and JEFFREY MARTIN, )<br>)<br>)<br>Defendants. ) | Civil Action No. 03-1490<br>Judge Thomas M. Hardiman/<br>Magistrate Judge Amy Reynolds Hay<br><br><br><br>Re: Doc. Nos. 75, 80 & 83 |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the DOC Defendants' motion for summary judgment (Doc. 75) and supplemental motion (Doc. 83) be granted. It is further recommended that the Medical Defendants' motion for summary judgment (Doc. 80) be granted.

REPORT

Christopher Carston ("Plaintiff"), while a prisoner in the State Correctional Institution at Graterford, Pennsylvania, filed a civil rights suit against multiple defendants as a result of his allegedly being denied food and water for four days while housed at SCI-Greene in a psychiatric observation cell after he had smeared the cell with his own feces. He also complains that some of the Defendants verbally taunted and harassed him.

**A. Relevant Procedural History**

Plaintiff is proceeding pro se and in forma pauperis. He filed a typed civil rights complaint, which was unverified, in which he complained about an incident that occurred while he was housed at SCI-Greene. He claimed that he became psychotic on March 2, 2002, was taken from his cell and placed in a psychiatric observation cell. Doc. 10 at ¶¶ 16-22. On March

4, 2002, while in that observation cell, he smeared the walls and door and window with his own feces.  Id. At ¶ 24.   Plaintiff had breakfast on the morning of March 4, 2002 but thereafter he was allegedly denied food and water until March 8, 2002.  Id. at ¶¶ 25-32.  Plaintiff complains that this deprived him of his Eighth Amendment rights.

Plaintiff also complains that while he was in the psychiatric observation cell, Defendants Sacks, Hyde, Croftcheck and Valkco made fun of Plaintiff, called him names and verbally harassed him.  Id. at ¶¶ 35-36.  Plaintiff alleges that these Defendants violated his Eighth Amendment rights.

Plaintiff's complaint names 11 Defendants.  Defendants Krohn and Rathore are psychiatrists at SCI-Greene.  Defendants Falor and Harper are medical doctors at SCI-Greene.  These four physicians are apparently independent contractors.  Plaintiff alleges that all four of them knew about and/or condoned and or failed to intervene to prevent the alleged violation of Plaintiff's rights.  Collectively, these four defendants will be referred to as the "Medical Defendants."

The seven remaining defendants include the following individuals.  Defendants David Sacks, Mare Markiewicz and Eric Valkco are psychologists at SCI-Greene.  Id. at ¶¶ 4-5.  Defendant Hyde is the Health Care Administrator at SCI-Greene.  Id. At ¶ 11.  Defendant Susan Croftcheck is a nurse there.  Defendant Paul Stowizky is the Deputy Superintendent there and Defendant Martin is a guard there.   Apparently, these seven Defendants are all employees of the Department of Corrections.  Collectively, they will be referred to as the "DOC Defendants."

Previously, the DOC Defendants filed a motion for summary judgment, Doc. 26, in which they argued that Plaintiff failed to exhaust because he did not timely file any administrative grievances.  The court agreed and granted the summary judgment motion filed by the DOC Defendants and sua sponte granted summary judgment to the Medical Defendants because the failure to exhaust rationale applied equally to them.  Doc. Nos. 47 & 51.  Plaintiff appealed and

the Court of Appeals vacated the grant of summary judgment, finding that there was a genuine issue of material fact as to whether Plaintiff timely filed his administrative grievances. Doc. 56.

Subsequently, discovery was had and the DOC Defendants have now filed another summary judgment motion, Doc. 75, and a supplemental motion for summary judgment, Doc. 84. The Medical Defendants have filed a motion for summary judgment, Doc. 80. These motions are ripe for review.

>   B.   **Standard of Review for Summary Judgment**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

3

**C. Discussion**

      1.    <u>DOC Motion for Summary Judgment</u>

The DOC Defendants first argue that Plaintiff seeks to hold all of them, other than Martin, liable solely based on the doctrine of respondeat superior[1] concerning Plaintiff's allegations of lack of food and water. Doc. 76 at 5-6. The general rule in Section 1983 cases, such as this one, is that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Hence, the only way a defendant can be liable under Section 1983 is based upon facts showing that he or she was personally involved in depriving the civil rights of the plaintiff, i.e., personally engaged in wrongdoing. Moreover, it is the Plaintiff who has the burden to show that the defendants personally participated in violating his constitutional rights. <u>See</u>, e.g., <u>Thomas v. Conway</u>, 2005 WL 2030304, at *5 (M.D.Pa. July 21, 2005)("in order to sustain a claim against an individual pursuant to § 1983, a plaintiff's burden is to show that the individual had 'personal involvement in the alleged wrongs'"); <u>Mabine v. Vaughn</u>, 25 F.Supp.2d 587, 592 (E.D.Pa. 1998)(same).

The DOC Defendants are correct in their respondeat superior argument with respect to Defendants Stowitzky (the Deputy Superintendent at SCI-Greene) and Markiewicz (identified as the "head psychologist at SCI-Greene"). Doc. 10 at ¶ 5. There is no evidence indicating that Defendants Stowitzky or Markiewicz personally engaged in any wrongdoing. The only evidentiary materials that Plaintiff provided in his responsive briefs which address this issue are two affidavits, which fail to even make mention of Defendants Stowitsky or Markiewicz. <u>See</u> Doc. 78 at pp. 25-30. Accordingly, on the state of this evidentiary record, there is no evidence

---

[1]    "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." <u>McClelland v. Facteau</u>, 610 F.2d 693, 695 (10th Cir. 1979).

4

upon which a jury could rely to find Defendants Stowitzky and Markiewicz liable other than on a theory of respondeat superior liability. Hence, Defendants Stowitzky and Markiewicz are entitled to summary judgment.

Moreover, the affidavit of inmate David Hall, dated March 16, 2002, submitted by Plaintiff, does not even mention any of the Defendants who are named in the unverified complaint other than defendant Sacks. Mr. Hall avers that on March 13, 2002, he overheard a corrections officer and Sergeant Granidas say that "Mr. Saks [sic] instructed them to only give Mr. Carston toilet paper one square at a time one by one." Doc. 78 at 28-29. Even if the court could consider this hearsay evidence concerning Mr. Sacks, it would utterly fail to support any Eighth Amendment claim against him concerning the relevant time period because Plaintiff claims he was denied food and water between March 2 - 7, 2002, a time-frame preceding the date on which Mr. Hall heard the aforementioned remarks. Doc. 10 at ¶¶ 16 - 33; ¶ 33 ("On March 7, 2002, at 0915 hours Plaintiff was extracted from the psychiatric observation cell where he had been housed for four days . . . with no food or water or anything else to drink."). Moreover, even if we considered the affidavit sufficient, giving a prisoner who stuffs his toilet with toilet paper to overflow the toilet, as Plaintiff did, one piece of toilet paper at a time, simply does not amount to cruel and unusual punishment in violation of the Eighth Amendment. Cf. Phillips v. East, 81 Fed.Appx. 483, 485 (5th Cir. 2003)("The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold confined indoors does not constitute a deprivation of the minimal civilized measures of life's necessities."); Harris v. Fleming, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (finding no Eighth Amendment violation when prison officials failed to provide a prisoner with toilet paper for five days, and soap, a toothbrush, and toothpaste for ten days) Cardenas v. Base, 2006 WL 151937, at *3 (E.D. Wash. Jan. 18, 2006)("In reviewing prior cases in which courts have determined whether deprivation of toilet paper rises to the level of a Constitutional violation, it is clear in viewing the facts in the

light most favorable to Plaintiff that the denial of toilet paper for almost six hours does not meet the objective test for cruel and unusual punishment.").

The only other affidavit provided by Plaintiff is the one attested to by Prisoner Henry Robinson, dated September 24, 2002. Doc. 78 at 25-27. While Robinson's affidavit makes mention of the DOC defendants by name, the averments therein again fail to support any claim that these defendants participated in denying food/water to Plaintiff or that they knew about Plaintiff being denied food/water. The affidavit in relevant part provides that

> During the first week of March while working over in medical, I observed and witness[ed] Mr. Carston in psych observation cell # 11. . . I also observed and witness[ed] Officer COI Campbell and several other officers making fun of Mr. Carston, calling him names and kicking his door also denying him food and water for several days! I also observed and witness[ed] Mr. Sacks and several officers and nurse Mr. John Hyde, and Nurse Bruce Pukol and Head Nurse Supervisor Susan Croftcheck, making fun of Mr. Carston. I heard Mr. Sacks tell officers and nurses that there's nothing wrong with Mr. Carston, he is just trying to go back to Wayne because they treat him real good up there. . . . I also observed and did witness Mr. Valko and several officers making fun of Mr. Carston. While having a conversation with COI Campbell and other officers who were working psych observation told me, per Captain Martin that Mr. Carston['s] water was to be turned off and not feed him into [sic, should be "until"] he clean[ed] off his window [that Mr. Carston had smeared with feces] and that Mr. Carston was denide [sic] food and water for several days. When I came to work that day one of the relief officer[s] exsplain [sic] to me that Mr. Carston was removed and exstracted [sic].

Doc. 78 at 25-26. Plaintiff was first extracted from his psychiatric observation cell on March 7th, 2002. Doc. 10 at ¶ 33 ("On March 7, 2002, at 0915 hours Plaintiff was extracted from the psychiatric observation cell where he had been housed for four days . . . with no food or water"); Doc. 83-2 at 13, ¶ 15. Hence, as made clear by the foregoing excerpt, during the relevant time period i.e., from March 2, 2002 until March 7, when Plaintiff was allegedly denied food and water according to the complaint, the affidavit provides no evidence that DOC defendants Sacks, Hyde, Valko, and Croftcheck had any role in denying Plaintiff food and water or even knew about Plaintiff being denied food and water.

6

At best, the affidavit from inmate Robinson notes that Defendants "Sacks and several officers and nurse Mr. John Hyde, and Nurse Bruce Pokel, and Head Nurse Supervisor Susan Croftcheck, ma[de] fun of Mr. Carston.  I heard Mr. Sacks tell officers and nurses that there's nothing wrong with Mr. Carston, he is just trying to go back to Wayne because they treat him real good up there ... I also observed and did witness Mr. Valko and several officers making fun of Mr. Carston."  Doc. 78 at 25-26.  There is no evidence of record that these Defendants had anything to do with denial of food and water.  Robinson's averments support a jury finding, **at most**, that these Defendants made fun of Plaintiff.  However, merely making fun of a prisoner, engaging in verbal harassment and even threats simply fails to state a claim under Section 1983.  O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)("alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation."); Ayala v. Terhune, 195 Fed.Appx. 87, 92 (3d Cir. 2006) ("Furthermore, Ayala's allegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); Pride v. Holden, 1 F.3d 1244 (Table, text available in Westlaw)(7th Cir. 1993) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) ("Verbal threats are not constitutional violations cognizable under § 1983").  Hence, summary judgment must be granted to all of the DOC Defendants as to Plaintiff's claims against them for denial of food and water and as to their alleged making fun of Plaintiff.

This leaves only the claim against Defendant Martin.  In their supplemental motion for summary judgment, the DOC Defendants note that Defendant Martin played no role in denying Plaintiff food or water.  They note that it was Captain Ogletree who ordered that Plaintiff's water be turned off given that Plaintiff was flooding his cell by stuffing the toilet and repeatedly flushing.  In support thereof, the DOC defendants cite to Defendant Stowitzky's responses to Plaintiff interrogatories.   In addition, the DOC Defendants supplied an affidavit from Defendant

7

Martin himself, wherein he attests that "at no time did I ever order that Mr. Carston be denied food and water for four days." Doc. 83-2 at 18, ¶ 2.

In the face of such evidence, the only evidence that Plaintiff offered on this record that even mentions Defendant Martin is the affidavit of Inmate Henry Robinson. Mr. Robinson mentions two incidents involving Defendant Martin. First he states, "While having a conversation with COI Campbell and other officers who were working psych observation told me, per Captain Martin that Mr. Carston['s] water was to be turned off and not feed him [until] he clean[ed] off his windows." Doc. 78 at 26. The second incident is described as follows: "[Sometime after Mr. Carston had been extracted and after the relevant period of time Plaintiff was supposed to have been denied food] Captain Martin also had come over to psych observation, which I have over heard him say to Dr. Rathore that if he [is] tired of his [i.e., Plaintiff's] sh[*]t and that there is nothing wrong with him, to discharge him back to the RHU." Id. The second incident recounted fails to allege any constitutional violation against Defendant Martin. A guard expressing an opinion that the Plaintiff is faking his mental illness deprives Plaintiff of none of his constitutional rights.

As for the first incident, the affidavit recounts classic hearsay and, as such, is insufficient to create a genuine issue of material fact especially in the face of Defendant Martin's contrary attestation in his affidavit.[2] See, e.g., Beyah v. Coughlin, 789 F.2d 986, 990 (2d Cir. 1986)("Rule 56(e) provides that '[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that

---

[2] It is true that Plaintiff stated in his brief in opposition that he was going to submit into evidence the housing unit log book which would prove that Defendant Martin had ordered that Carston be denied food and water. Doc. 86 at 2, Argument 2. However, it was never filed with the court. Cote v. MTP, Inc., 2003 WL 1477853, *2 (N.D. Ill. March 21, 2003) ("Cote does mention she plans on providing the testimony of a vocational expert to identify the reduction in job opportunities available to her due to her travel limitations and suggests it is thus premature to grant summary judgment. But it is too late to say what evidence she may be able to develop in the future. . . . Summary judgment is the put up or shut up moment in a lawsuit")(internal quotes omitted).

8

the affiant is competent to testify to the matters stated therein.' This requirement means that '[h]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.' 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed. 1985) (footnote omitted)"); Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001)("The Menkus affidavit appears inadequate under Rule 56(e). Not made on personal knowledge, it did not set forth facts that would be admissible in evidence. . . . Menkus instead relied on information from (unsworn) departmental personnel officers, and the source of these officers' information is unclear. Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay. Fed.R.Evid. 802."); Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir.1995)("To be sure, the nonmoving party need not produce evidence 'in a *form* that would be admissible at trial,' but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.' Furthermore, 'generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment.' (citations omitted)."). Hence, Plaintiff has failed to show where in the summary judgment record there is competent evidence to create a genuine issue of material fact with respect to Defendant Martin.

In light of the foregoing, summary judgment should be granted to all of the DOC Defendants as to all of Plaintiff's federal law claims against them.

The foregoing reasoning applies with equal force to Drs. Falor, Harper and Kahn.[3] There is absolutely no mention of these three defendants in the only evidentiary materials provided by the Plaintiff, i.e., the affidavits of inmates Hall and Robinson. Hence, on this evidentiary record, no reasonable jury could find these three defendants liable.

---

[3] Dr. Kahn is incorrectly referred to by Plaintiff as Dr. Kronh.

9

There is, however, mention of Dr. Rathore in only one of the two affidavits, i.e., the affidavit by Inmate Robinson. The references are as follows:

> Officer McVill has told me that Mr. Carston was banging his head and that he took a piece of metal off his wall and cut his wrist, in front of Dr. Rathore. . . . Captain Martin had also come over to psych observation, which I had over heard him say to Dr. Rathore that if he tired of his sh[]t and that there is nothing wrong with him, to discharge him back to the RHU. Later that day[,] Lt. Manchas and several officers came to exstract [sic] Mr. Carston out of the cell.

Doc. 78 at 26. The information related by Inmate Robinson in his affidavit with respect to Dr. Rathore and the wrist cutting incident constitutes classic hearsay and, hence, is incompetent to create a genuine issue of material fact. As to the second incident, at best, it establishes what Captain Martin told Dr. Rathore. It utterly fails to establish that Dr. Rathore denied Plaintiff food and water for the four days that are the subject of the complaint or indeed, for any amount of time. Hence, Dr. Rathore is entitled to summary judgment on this record as well.

    2.    <u>State Law Claims</u>

Plaintiff also refers to state law claims without elaboration. Doc. 10 at ¶ 2. As to Plaintiff's state law claims against the DOC Defendants, the DOC Defendants invoked the defense of sovereign immunity. Doc. 76 at 10. Plaintiff does not respond with any evidence or convincing legal argument as to why his state law claims against the DOC Defendants are not barred by the sovereign immunity statute and, thus, has failed to show that there is a genuine issue of material fact with respect to his state law claims against the DOC Defendants. Hence, they are entitled to summary judgment on those claims as well.[4]

---

[4] To the extent that Plaintiff is attempting to make state law claims against the Medical Defendants, who may not be entitled to invoke the defense of sovereign immunity, because this court recommends the denial of all federal claims against all defendants, it recommends dismissal of the state law claims against the Medical Defendants albeit without prejudice. <u>Boneburger v. Plymouth Township</u>, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'")(quoting <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)). <u>See also</u>  28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all
(continued...)

### 3. Medical Defendants' Failure to Exhaust Defense

The Medical Defendants filed a motion for summary judgment in which they argue that Plaintiff procedurally defaulted his claims by failing to appeal to the third level of the grievance procedure. In response to the motion for summary judgment Plaintiff offered several legal arguments and evidentiary materials including the two affidavits already discussed, which do not address the procedural default issue and the Court of Appeals opinion in this case that earlier vacated the District Court's grant of summary judgment based on the untimeliness of Plaintiff's filing of grievances in April 2002.

A brief recitation of the factual history will help to provide a background for understanding the arguments. By Plaintiff's own evidence, shortly after Plaintiff was taken out of the medical/psych observation unit cell and placed in the RHU cell, Plaintiff began to file a series of grievances, which will be referred to as the "April Grievances."[5] They were all rejected as untimely filed, both initially and upon appeal to the Superintendent. Doc. 41, Ex. E. Previously in this case, the DOC Defendants had filed a motion for summary judgment based on the contention that the record established that Plaintiff had not timely filed these grievances. The Court, in its earlier report and recommendation found that there was no genuine issue of material fact concerning whether Plaintiff timely filed the April 2002 Grievances. Doc. 47 at 10 ("The Court finds that this record does not present a genuine issue of material fact as to whether Plaintiff timely filed his grievances even with the five day extension, in light of the record which essentially shows that there is no true evidentiary dispute concerning whether Plaintiff failed to

---

[4] (...continued)
   claims over which it has original jurisdiction...."

[5]   See Doc. 41, Ex. D at un. p. 2, Grievance No. 20911 dated 4/19/02; at unn. p. 6, Grievance No. 20902, dated 4/20/02; at unn. p. 10, Grievance No. 20907, dated 4/19/02; at unn. p. 13, Grievance No. 20906 dated 4/20/06; at unn. p. 15, Grievance No. 20909 dated 4/20/02; at unn. p. 19, Grievance No. 20913 dated 4/19/02; at unn. p. 23, Grievance No. 20914, dated 4/19/02.

11

place his grievances in the grievance box before May 15, 2002."). Although the Medical Defendants had not filed a motion for summary judgment, the court sua sponte granted them summary judgment based on the same untimeliness reasoning which was equally applicable to them. Id. at 11-12. The District Court adopted the report and recommendation as the opinion of the Court. Doc. 53. The Plaintiff appealed to the Court of Appeals, which vacated and remanded. The Court of Appeals decided that there was a genuine issue of material fact as to whether the April 2002 Grievances, i.e., Grievance Nos. 20911 - 20914 were timely filed. In pertinent part, the Court reasoned:

> There is a factual dispute as to whether Carston complied with the prison grievance procedures. In his opposition to the summary judgment motion, Carston submitted evidence supporting his contention that his grievances were submitted within the five-day extension of time he received. He provided copies of the grievances themselves, which are dated April 19 and 20, 2002. He also submitted copies of the April 26, 2002 notice he sent to a staff member stating a corrections officer placed his grievances in the grievance box on April 22, 2002, but no one had picked them up, and his May 10, 2002 letter to the Superintendent stating that the grievances had not been picked up.
>
> The DOC defendants rely on the Grievance Coordinator's denial of the grievances as untimely, and Carston's unsuccessful appeals. The Grievance Coordinator's decision states that the grievances were received on May 15, 2002. The Grievance Coordinator and the Superintendent noted that other grievances had been received from Carston's pod during the same time period. The DOC defendants cite no other basis for their assertion that Carston did not comply with prison grievance procedures.
>
> Viewing the evidence in the light most favorable to Carston, the non-moving party . . . , a genuine issue of material fact exists as to whether Carston complied with prison grievance procedures and properly exhausted his claims. The parties' factual dispute as to whether Carston's grievances were timely precludes summary judgment.

Carston v. Sacks, 157 Fed.Appx. 504, 506 (3d Cir. 2005). Accordingly, it is clear that the Third Circuit Court of Appeals decided the question that there is a genuine issue of material fact concerning whether the April Grievances, i.e., those Numbered 20911 - 20914, were timely filed.

In contrast to the issue decided in the District Court and the Appeals Court, the issue now raised by the Medical Defendants is the issue of whether Plaintiff procedurally defaulted his

claims by failing to appeal those April 2002 Grievances all the way to the Third Level, i.e., to the Chief Grievance Coordinator, as required by the DOC regulations concerning grievances. Doc. 80, Ex. D at 51-2 (setting forth the regulation). Hence, given that this question of whether Plaintiff appealed the April 2002 Grievances all the way to the third level was not decided previously, Plaintiff's appending the Court of Appeals opinion in response to the Medical Defendants' summary judgment motion gains him nothing because the question of whether he appealed all the way to the third level was not presented to that Court and hence not decided by that Court. Thus, there is no bar to considering the Medical Defendants' argument concerning his procedural default of his claim based on his failure to appeal to the third level.

In support of their summary judgment motion, the Medical Defendants submitted an affidavit from Dan Davis, the Grievance Coordinator at SCI-Greene, wherein he attests that the only two grievances filed by Plaintiff against Drs. Kahn and Rathore were not appealed to the third and final level. Doc. 80, Ex. C at 17-21.

In order for a prisoner-plaintiff to exhaust his administrative remedies within the meaning of Section 1997e(a), he or she must utilize all three levels of the DOC grievance system. See, e.g., Jones v. Maher, 131 Fed.Appx. 813, 815 (3d Cir. 2005); Ahmed v. Sromovski, 103 F.Supp.2d 838, 843 (E.D.Pa. 2000). Failure to abide by the DOC Grievance policy, requiring appeal to the third and final stage, constitutes a procedural default. See, e.g., Salley v. PA Dept. of Corrections, 181 Fed.Appx. 258 (3d Cir. 2006) (failure to appeal constitutes a procedural default); Bartelli v. Lewis, 2005 WL 2300362, (M.D.Pa. Sept. 9, 2005) (same). While it is true that exhaustion/procedural default is an affirmative defense, Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002), meaning that the burden is upon the Defendants to establish such, they have met their initial summary judgment burden by pointing to evidence in the record to show Plaintiff failed to exhaust by failing to appeal to the third level.

In response to the Medical Defendants' motion, as noted above, Plaintiff offered the Court of Appeals opinion, quoting it for the proposition that "The 3rd Circuit sites [sic] that there

[is] a genuine issue of material fact exists as to whether Carston complied with prison grievance procedures and properly exhausted his claims." Doc. 86 at 12. However, as explained above, the Court of Appeals opinion does not address and hence, does not preclude this court from finding that there is no genuine issue of material fact with respect to whether he procedurally defaulted his claims by failing to appeal his April Grievances to the third level.

It is true that Plaintiff, in his response to the Medical Defendants' motion for summary judgment, also included a rejection letter from the Chief Grievance Coordinator, dated December 19, 2002, which is offered by Plaintiff apparently in support of his contention that he did file third level appeals. Doc. 86 at p. 9. However, that letter addressed the following grievance Numbers: 35995 filed 11/9/02,[6] 35996 filed 11/9/02,[7] 35997 filed 11/9/02,[8] 35998 filed on 11/9/02,[9] 35999 filed 11/10/02,[10] 36000 filed 11/9/02,[11] 36001 filed 11/10/02,[12] 36003 filed 11/10/02,[13] 36004 and 36005 filed on 11/9/02[14] (collectively the "October Grievances"). It is undisputed that Plaintiff did not file his October Grievances until October, 2002, some seven months after the alleged events that occurred in March 2002 and the prison authorities uniformly rejected the grievances as being untimely. The only argument Plaintiff makes in the face of this evidence is that "plaintiff cannot be held for a time base of filing grievance within fifteen

---

[6] Doc. 41, Ex. H at unn. p. 10

[7] Id., at Ex. H at unn. p. 16.

[8] Id., at Ex. H at unn. p. 22.

[9] Id., at Ex. H at unn. p. 28

[10] Id., at Ex. H at unn. p. 34.

[11] Doc. 41 Ex. H at unn. p. 3.

[12] Id., Ex. I at unn. p. 3

[13] Id., Ex. I at unn. p. 9.

[14] Id., Ex. I at unn. P. 14.

14

working days, after the event upon which the claim[s] are base[d], being the plaintiff was in medical psych for several weeks and was not allowed any writing material because plaintiff was a danger to himself and others." Doc. 86 at 3.  Plaintiff claims, in his unsworn brief in opposition, that after he was taken out of the Medical Psych observation cell, he was placed in an RHU cell on F/B block "as part of a highly focus[ed] behavior plan.  Once again, plaintiff was denied any writing material; such as request slips, grievance forms, pens and or pencils, because plaintiff was still in observation cell." Id.  However, the evidence of record establishes that Plaintiff was in the FB cell only from March 13, through March 17, 2002, Doc. 80 at p. 42.  He was then transferred to FD cell in the RHU on March 17, 2002 and remained in there until at least May 20, 2002.[15]  Id.  Again it is undisputed that in April 2002, during this time in the behavior modification program, he allegedly wrote and filed all of the April Grievances, which would contradict that he was given no paper or pens. In any event, he utterly fails to explain why although he named many of the Defendants in those April Grievances he failed to name Drs. Falor and Harper until the October Grievances, which are indisputably untimely filed.

In light of the foregoing, to the extent that Plaintiff relies on the October Grievances to claim that he did indeed complete the appeals process to the third level, the court finds that the grievances appealed to the third level were the October Grievances which are manifestly untimely and hence do not satisfy the exhaustion requirement and, in fact, demonstrate a procedural default of all claims raised therein that were not also raised in the April Grievances.[16]

---

[15]  The evidence notes that Plaintiff was in the FD cell from March 17, 2002 until "current" and the date which would be the "current" date is indicated at the top of the page, i.e., May 20, 2002.

[16]  These claims would include the claims against Drs. Falor and Harper which were clearly not included in any of the April Grievances and hence are procedurally defaulted either because they were unnamed in the April 2002 Grievances or because the October Grievances, which are the only ones that mention these two defendants, are manifestly untimely.  Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004)(failure to name defendants in grievances and/or to abide by DOC regulations results in procedurally defaulting the claims).  See Doc 41, Exs. A-E (containing the April 2002 grievances).

15

To the extent that Plaintiff relies on the April Grievances to satisfy the exhaustion requirement, the court finds that there is no genuine issue of material fact that Plaintiff failed to appeal the April Grievances to the third level and hence, he has procedurally defaulted all of his claims against the Medical Defendants who were named in those April Grievances, i.e., Drs. Rathore and Kahn.[17]

Accordingly, all of the Defendants are entitled to summary judgment as to all of Plaintiff's claims against them for the foregoing reasons.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 7 February, 2007

cc:   Hon. Thomas M. Hardiman
      United States District Judge
      Christopher Carston
      902 F, Baldwin Street
      LaGrange, GA 30241

      All counsel of record via Notice of Electronic Filing

---

[17] To the extent that Plaintiff failed to appeal all of the other April 2002 Grievances (i.e., the grievances other than the two mentioning Drs. Rathore and Kahn) to the third level, he has likewise procedurally defaulted his claims contained in those grievances, which is to say, he procedurally defaulted his claims against the DOC Defendants. The DOC Defendants do not supply an affidavit indicating whether Plaintiff failed to appeal these other April 2002 Grievances to the third level.